[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13059

_____

D. C. Docket No. 6:11-cr-00156-GAP-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOUGLAS M. GUETZLOE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 27, 2013)

Before DUBINA, Chief Judge, JORDAN and COX, Circuit Judges.

PER CURIAM:

Appellant Douglas M. Guetzloe ("Guetzloe") appeals his two federal

misdemeanor convictions for willful failure to file income tax returns for tax years

2005 and 2006 and the district court's imposition as a special condition of supervised release that he cooperate in the collection of DNA as directed by the probation office. After reviewing the record, reading the briefs, and having the benefit of oral argument, we affirm Guetzloe's convictions and the imposition as a special condition of supervised release but remand this case to the district court with instructions to correct clerical errors within the judgment of conviction.

I.

Guetzloe worked as a self-employed political and public relations consultant. For tax years 2005 and 2006, Guetzloe applied for extensions to file his tax returns, but ultimately failed to file returns reporting income of $186,000 earned in 2005 and $188,000 earned in 2006. In May 2011, the government filed a criminal information against Guetzloe charging him with two counts of willfully failing to file federal income tax returns for tax year 2005 (Count One) and tax year 2006 (Count Two), in violation of 26 U.S.C. § 7203. The case proceeded to trial.

Prior to jury selection, prospective jurors completed questionnaires which elicited information related to their backgrounds, families, and interests, as well as their knowledge of the case, Guetzloe, and his activities. During voir dire, the district court asked the venire members several more questions on these topics, as

2

well as tax-related questions concerning the prospective jurors' dealings with the IRS and their views on federal income taxation.  The court also asked the venire members whether, if selected, they could abide by its instructions and render a verdict solely on the merits of the evidence.

Guetzloe requested that the court ask the venire members additional questions about their attitudes regarding the presumption of innocence, the government's burden of proof, and a defendant's right not to testify.  The court declined to ask the venire members any specific questions about these matters.  However, prior to opening statements, and again in its final instructions, the district court instructed the jury on the presumption of innocence, the government's burden of proof, and Guetzloe's right not to testify.

The jury found Guetzloe guilty on both counts.  The district court sentenced Guetzloe to 15 months' imprisonment, including 12 months on Count One and a consecutive term of three months on Count Two, and further imposed two concurrently running one-year terms of supervised release.

The Presentence Investigation Report ("PSI") upon which the district court relied states that Guetzloe's tax offenses are qualifying offenses requiring Guetzloe to cooperate in the collection of his DNA during his supervised release.  Neither party objected to the paragraphs in the PSI concerning mandatory DNA collection.

3

During Guetzloe's sentencing hearing, the district court stated on the record his directive that Guetzloe should submit to DNA collection. Again, neither party objected at this point during sentencing. Consequently, Guetzloe's judgment includes as an additional condition of supervised release that Guetzloe "shall cooperate in the collection of DNA, as directed by the Probation Officer." [R. 91 at 4.] The judgment also states that Guetzloe's two offenses concluded on "December 31, 2005" and on "December 31, 2006." [*Id.* at 1.]

After entry of the judgment, Guetzloe timely perfected this appeal.

## II.

Guetzloe first argues that the district court abused its discretion by failing to question the jury venire members, per Guetzloe's request, about their understanding of the government's burden of proof in a criminal case, the presumption of a criminal defendant's innocence, Guetzloe's right not to testify, and whether the venire members would have difficulty abiding by these legal principles. Guetzloe maintains that the district court's denial of his request violates his Sixth Amendment right to a fair and impartial jury because it prevented him from exercising informed peremptory strikes against potentially biased jurors.

We review a district court's refusal to ask proposed voir dire questions for abuse of discretion. *United States v. Vera*, 701 F.2d 1349, 1355 (11th Cir. 1983).

4

"The standard for evaluating the district court's exercise of its discretion is whether the procedure used for testing juror impartiality created a reasonable assurance that prejudice would be discovered if present." *United States v. Tegzes*, 715 F.2d 505, 507 (11th Cir. 1983) (internal quotation marks omitted). "A trial court . . . does not abuse its discretion in precluding voir dire examination of the prospective jurors' understanding of the law provided that the court's general voir dire questions and jury charge afford the protection sought by counsel." *Vera*, 701 F.2d at 1356.

In *United States v. Rosenthal*, 793 F.2d 1214, 1230 (11th Cir. 1986), and in *United States v. Miller*, 758 F.2d 570, 571–73 (11th Cir. 1985), we addressed arguments very similar to the ones asserted by Guetzloe regarding a district court's refusal to question potential jurors on their agreement with the legal concepts of reasonable doubt and the presumption of innocence. Relying on the former Fifth Circuit's opinion in *United States v. Ledee*, 549 F.2d 990, 991–92 (5th Cir. 1977),[1] we held in both cases that the district courts did not abuse their discretion. *Rosenthal*, 793 F.2d at 1230; *Miller*, 758 F.2d at 573. In each case we reasoned that the refusal to ask the defendants' requested questions did not prejudice the defendants because (1) each court asked the prospective jurors during voir dire whether they would have difficulty following the law as stated by the court,

---

[1] The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

regardless of their agreement with the law, and (2) each court properly instructed the juries about the presumption of innocence, the government's burden of proof, and the concept of reasonable doubt. *See Rosenthal*, 793 F.2d at 1230; *Miller*, 758 F.2d at 573.

The only thing distinguishing Guetzloe's argument from the issues in *Rosenthal* and *Miller* is Guetzloe's request that the venire members also be questioned concerning his right not to testify. He contends that his proposed questions regarding his constitutional right not to testify would have been helpful in exposing potential jurors' biases or prejudices against criminal defendants, like himself, who elect not to take the stand in their defense. Guetzloe further asserts that the district court's instructions to the jury regarding his choice not to testify failed to alleviate the prejudice he suffered because he did not know which venire members at the time the jury was struck might be biased against him for not testifying. Guetzloe cites no binding authority in support of his argument. Guetzloe also argues that even if it was not reversible error for the district court to refuse to question the venire members about a defendant's right not to testify, the district court's refusal to ask the venire members his additional questions amounted to cumulative error.

6

Upon reviewing the record, we conclude that the district court, through its general voir dire questions and its instructions to the jury, assured that an impartial jury was impaneled. *See Vera*, 701 F.2d at 1356. In addition to asking numerous questions to reveal the prospective jurors' possible biases about the IRS, income tax obligations, or Guetzloe personally, the district court asked the venire members generally whether they would "be able to render a verdict solely on the evidence presented at the trial and in the context of the law" in accordance with "[the court's] instructions at the conclusion of the case, disregarding any other ideas notions[,] or beliefs about the law that [the jurors] may have encountered in reaching [their] verdict." [R. 107 at 135.] No juror expressed any reservations in response to the court's question. [*See id.*] After the jury was impaneled and before opening statements, the court instructed the jury members that the law presumed Guetzloe to be innocent until proven guilty, that the government bore the burden of proving Guetzloe's guilt beyond a reasonable doubt, that Guetzloe did not have to prove his innocence, and that the jury could not draw any inference from Guetzloe's choice not to testify in his defense. [*Id.* at 153–54.] Again, after the close of evidence and before closing arguments, the court reviewed these legal concepts in its instructions. [R. 109 at 79–80.]

7

Consequently, "[w]e conclude that the overall voir dire questioning, coupled with the instructions given by the [district] court at the [opening and] close of the case, adequately protected [Guetzloe's] right to be tried by a fair and impartial jury." *Miller*, 758 F.2d at 573. The district court did not abuse its discretion in declining to question the jury about either Guetzloe's right not to testify or Guetzloe's other requested questions.

### III.

Next, Guetzloe contends that the district court plainly erred when it imposed, as a condition of supervised release, the requirement that Guetzloe submit to DNA collection.[2] Guetzloe asserts that he was not convicted of any crime identified by federal law as a qualifying offense requiring DNA collection. *See* 42 U.S.C. § 14135a(d); 28 C.F.R. § 28.2. The government concedes that Guetzloe was not convicted of a qualifying offense and therefore, that the district court's error is plain. However, the plain error standard requires that Guetzloe show not only (1) that the court committed an error, and (2) that the error is plain, but also (3) that the error affects his substantial rights. *See United States v. Bacon*, 598 F.3d 772, 777 (11th Cir. 2010). Then, we may exercise our discretion to consider the alleged

---

[2] Ordinarily, we review for abuse of discretion the imposition of a special condition of supervised release. *United States v. Moran*, 573 F.3d 1132, 1137 (11th Cir. 2009). Here, however, Guetzloe failed to object to the imposition of the special condition prior to or during his sentencing, and thus, we review for plain error. *See id.*

error, "but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* Guetzloe fails to argue in his initial brief how the district court's error affects his substantial rights, or how the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000) (holding that arguments not raised and developed in the initial brief are abandoned). Thus, we decline to disturb the district court's imposition of the condition that Guetzloe submit to DNA collection during his supervised release.

IV.

Guetzloe finally requests that this court remand his case to the district court for the correction of clerical errors within his judgment. The judgment shows that Guetzloe's criminal offenses for willfully failing to file income tax returns concluded on December 31, 2005 (Count One) and December 31, 2006 (Count Two). [R. 91 at 1.] However, the government's information against Guetzloe indicates that he was required to file his 2005 tax return "on or before October 16, 2006," and his 2006 tax return "on or before October 15, 2007." [R. 1 at 1–2.] The government agrees with Guetzloe that these clerical errors require us to remand the case with instructions to correct the judgment. Hence, we remand this case for the limited purpose of correcting the offense conclusion dates within the

9

judgment.  *See United States v. James*, 642 F.3d 1333, 1343 (11th Cir. 2011)

(remanding with instructions to correct a clerical error within a judgment).

V.

For the foregoing reasons, we affirm Guetzloe's convictions and the special

condition of supervised release but remand this case to the district court for the

limited purpose of correcting clerical errors within the judgment.

**AFFIRMED and REMANDED.**